UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| DIANA M. ROSADO, Individually and on behalf of all other persons similarly situated, | ECF CASE |
| Plaintiff, | |
| v. | No.: 1: :20-cv-07788-MKV |
| THE FRENCH PARADOX INC. d/b/a OCabanon, ARMEL JOLY and ALEXANDRE MUR, Jointly and Severally, | |
| Defendants. | |

---

**MEMORANDUM OF LAW IN SUPPORT OF THE PARTIES' MOTION FOR APPROVAL OF THE FAIR LABOR STANDARDS ACT SETTLEMENT AGREEMENT**

---

Dated: New York, New York
April 9, 2021

LIPSKY LOWE LLP
420 Lexington Avenue, Suite 1830
New York, New York 10170-1830
212.392.4772
Plaintiff's Counsel

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ..................................................................................................... iii

PRELIMINARY STATEMENT .................................................................................................. 1

FACTUAL AND PROCEDURAL BACKGROUND ..................................................................... 2

I.      SUMMARY OF PLAINTIFF'S CLAIMS .......................................................................... 2

II.     SUMMARY OF DEFENDANTS' DEFENSES .................................................................. 4

III.    SETTLEMENT NEGOTIATION HISTORY AND SETTLEMENT TERMS ................. 5

PROCEDURAL HISTORY ......................................................................................................... 6

LEGAL ARGUMENT ................................................................................................................. 6

I.      THE SETTLEMENT AGREEMENT SHOULD BE APPROVED AS IT IS FAIR AND
        REASONABLE UNDER THE CIRCUMSTANCES AND COMPLIES WITH THE
        SECOND CIRCUIT'S DECISION IN CHEEKS V. FREEPORT PANCAKE HOUSE,
        INC. ...................................................................................................................................... 6

        A.      The Settlement Agreement is Fair and Reasonable ................................................. 6

                1.      Case Complexity, Expense and Duration of Litigation .............................. 7

                2.      The Stage of the Proceedings ..................................................................... 8

                3.      The Risks of Establishing Liability and Damages ..................................... 8

                4.      The Ability of Defendants to Withstand a Larger Judgment ..................... 9

                5.      The Range of Reasonableness In Light of the Best Possible Recovery and
                        All the Risks of Litigation .......................................................................... 9

        B.      The Agreement Is the Product of Arm's-Length Settlement Negotiations ........... 10

        C.      The Agreement Complies with the Second Circuit's Decision in Cheeks v.
                Freeport Pancake House ....................................................................................... 10

                1.      The Agreement is Public ........................................................................... 10

2.      A Limited Release Exists ........................................................................ 11

3.      The Non-Disparagement Provision Is Properly Tailored ........................ 11

II.      THE COURT SHOULD APPROVE PLAINTIFF COUNSEL'S FEES AND
EXPENSES, AS THE AMOUNTS ARE REASONABLE................................................ 11

A.      Counsel's Fees of One-Third of The Settlement Is Reasonable and Regularly
Approved.............................................................................................................. 11

B.      Counsel's Fee Request Is Further Reasonable Considering Their Hourly Rates and
Hours Expended ................................................................................................... 12

1.      The Requested Hourly Rates Are Reasonable ......................................... 12

C.      Plaintiff's Counsel Are Entitled to Their Expenses ............................................ 16

CONCLUSION................................................................................................................................ 16

TABLE OF AUTHORITIES

Cases

*Alvarez v. Sterling Portfolio Inv. L.P.,*
No. 1:16-cv-5337 (CBA)(VMS), 2017 U.S. Dist. Lexis 206043
(E.D.N.Y. Dec. 13, 2017) ...................................................................................................5,7, 8

*Arbor Hill Concerned Citizens of Neighborhood Ass'n v. County of Albany,*
522 F.3d 182 (2d Cir. 2007)................................................................................................ 11

*Batista v. Heavy Construction Co., Inc. et al.,*
No. 1:20-cv-03431 (RER), (E.D.N.Y. February 15, 2021) ........................................ 13

*Bodon v. Domino's Pizza, LLC,*
No. 1:09-cv-2941 (SLT), 2015 U.S. Dist. Lexis 17358 (E.D.N.Y. Jan. 16, 2015)......................... 8

*Campos v. Goode,*
No. 1:10-cv-224 (DF), 2011 U.S. Dist. Lexis 22959 (S.D.N.Y. March 4, 2011)......................... 11

*Ceka v. PBM/CMSI Inc.,*
No. 12-cv-1711 (DAB), 2014 U.S. Dist. LEXIS 168169 (S.D.N.Y. Dec. 2, 2014) ..................... 12

*Centro De La Comunidad Hispana De Locust Valley v. Town of Oyster Bay,*
2019 U.S. Dist. LEXIS 102840 (E.D.N.Y. June 18, 2019) ........................................ 13

*Cheeks v. Freeport Pancake House, Inc.,*
796 F.3d 199 (2d Cir. 2015)........................................................................................ 1, 5, 9

*Emiliano Nieto Zepeda v. Baggio, Ltd.,*
No. 1:17-cv-2290 (VB), 2017 U.S. Dist. LEXIS 143332 (S.D.N.Y. Sept. 1, 2017) ............. 10, 11

*Febus v. Guardian First Funding Grp., LLC,*
870 F. Supp. 2d 337 (S.D.N.Y. 2012)...................................................................... 10

*Feuer v. Cornerstone Hotels Corp.,*
No. 14-CV-5388 (JFB) (SIL), 2020 WL 401787 (E.D.N.Y. Jan. 24, 2020) ................................ 6

*Garcia v. Hirakegoma Inc.,*
1:17-cv-7608 (SLC), 2020 U.S. Dist. Lexis 40637 (S.D.N.Y. March 9, 2020) .................... 12, 14

*Garcia v. Pancho Villa's of Huntington Vill., Inc.,*
No. 1:09-cv-486 (ETB), 2012 U.S. Dist. Lexis 144446 (E.D.N.Y. Oct. 4, 2012).................... 9, 11

*Gomez v. Midwood Lumber & Millwork, Inc.,*
No. 1:17-cv-3064 (KAM)(JO), 2018 U.S. Dist. Lexis 101019 (E.D.N.Y. June 17, 2018) .......... 10

*Hall v. Prosource Techs., LLC,*
No. 1:14-cv-2502 (SIL), 2016 US. Dist. Lexis 5379 (E.D.N.Y. April 11, 2016)........................... 7

*Liang Huo v. Go Sushi Go 9th Avenue,*
No. 1:13-cv-6573 (KBF), 2014 U.S. Dist. Lexis 51621 (S.D.N.Y. April 10, 2014)................... 14

*Marquez v. Erenler, Inc.,*
No. 12-cv-8580 (GHW), 2014 U.S. Dist. LEXIS 159128 (S.D.N.Y. Nov. 10, 2014) ................ 15

*Marshall v. Deutsche Post DHL,*
1:13-cv-1471 (RJD) (JO), 2015 U.S. Dist. Lexis 125869 (E.D.N.Y. Sept. 21, 2015)................... 7

*Medley v. Am. Cancer Soc.,*
No. 1:10-cv-3214 (BSJ), 2010 U.S. Dist. LEXIS 75098 (S.D.N.Y. July 23, 2010)...................... 6

*Morris v. Affinity Health Plan, Inc.,*
859 F. Supp. 2d 611 (S.D.N.Y. 2012)........................................................................... 15

*Owens v. Fresh Direct LLC,*
1:14-cv-1909 (VEC) (S.D.N.Y. Oct. 30, 2015) ............................................................ 12

*Panganiban v. Medex Diagnostic and Treatment Ctr., LLC,*
No. 1:15-cv-2588 (AMD)(LB), 2016 U.S. Dist. Lexis 29158 (E.D.N.Y. Mar. 7, 2016) ............ 10

*Pastor v. Alice Cleaners, Inc.,*
1:16-cv-7264 (JLC), 2017 U.S. Dist. Lexis 192806 (S.D.N.Y. Nov. 21, 2017)........................... 12

*Patrascu v. Frederic Fekkai New York LLC,*
1:19-cv-1376 (VEC) (S.D.N.Y. June 17, 2020) .......................................................... 12

*Qiting Yang v. Matsuya Quality Japanese, Inc.,*
1:15-cv-1949 (JS)(ARL), 2017 U.S. Dist. Lexis 14823 (E.D.N.Y. 2017) .................................. 10

*Reiter v. MTA N.Y.C. Transit Auth.,*
457 F.3d 224 (2d Cir. 2006)..................................................................................... 12

*Rodriguez v. Obam Mgmt,*
1:13-cv-463 (PGG)(DF), 2016 U.S. Dist Lexis 34154 (S.D.N.Y. March 14, 2016)............. 13, 14

*Salvador v. Highland Int'l Transpo. Serv. Inc.,*
1:18-cv-5716 (SJB) (E.D.N.Y. July 25, 2019) ............................................................ 13

*Sampaio v. Boulder Rock Creek Developers, Inc.,*
No. 1:07-cv-153 (ETB) 2007 U.S. Dist. LEXIS 66013 (E.D.N.Y. Sept. 6, 2007)........................ 6

*Sanchez Gallego v. Adyar Ananda Bhaven Corp.,*
1:16-cv-4631 (AN), 2019 U.S. Dist. Lexis 3423 (S.D.N.Y. Jan. 8, 2019) ................................... 14

*Sanchez v. Alan's R E 99 Cents & Up Inc.,*
No. 1:16-cv-1881 (CBA) (LB), 2018 U.S. Dist. LEXIS 70647 (E.D.N.Y. April 24, 2018) ...... 6, 8

*Spencer v. No Parking Today, Inc., et al.,*
No. 12-cv-6323 (ALC) (AJP), Dkt. No. 237 (S.D.N.Y. Feb. 20, 2015) ...................................... 12

*Toure v. Amerigroup Corp.,*
No. 1:10-cv-5391, 2012 U.S. Dist. Lexis 110300 (E.D.N.Y. Aug. 6, 2011) ................................. 9

*Wolinsky v. Scholastic Inc.,*
No. 11-cv-5917 (JMF), 2012 U.S. Dist. LEXIS 93918 (S.D.N.Y. July 5, 2012) .......................... 5

<u>Statutes</u>

29 U.S.C. § 216(b) ...................................................................................................................... 15

N.Y. Lab. Law § 195 ............................................................................................................. 1, 2, 3

N.Y. Lab. Law §§ 198 .................................................................................................................. 15

Plaintiff submits this memorandum of law, on behalf of all parties, seeking the Court's approval of the settlement agreement in this Fair Labor Standards Act matter.

<u>PRELIMINARY STATEMENT</u>

Plaintiff alleges that she worked for Defendants' French restaurant as a server from September 2016 to December 11, 2019. She asserts in her September 22, 2020 Complaint several claims against them: failure to pay the minimum wage under New York Labor Law; failure to pay overtime premium pay under the Fair Labor Standards Act and Labor Law; failure to pay spread-of-hours pay under the Labor Law; unlawfully retaining gratuities under the FLSA and Labor Law; failure to provide the Notice and Acknowledgement of Payrate and Payday under N.Y. Lab. Law § 195.1; and failure to provide an accurate wage statement under N.Y. Lab. Law § 195. She estimates her total recovery, minus interest and liquidated damages, to be $78,933.82.

Defendants, however, vigorously deny any wrongdoing and particularly deny Plaintiff worked the hours she claims. Furthermore, Defendants deny that their tip pool was unlawful and assert that the claimed gratuities, if owed, are far less than claimed. Defendants, also, represent they lack the financial resources to pay a full judgment.

Through the Court's mediation program, the parties agreed to resolve Plaintiff's claims for $57,000. Due to Defendants' financial condition, this amount will be paid out in 10 payments: one payment of $25,000 within 10 days after the Court's approval of the settlement agreement; and 9 subsequent payments of $3,555.55, starting 30-days after the first payment and continuing in 30-day intervals thereafter. In total, Plaintiff will receive $37,534.96 and her counsel will receive $18,999.99 in fees (i.e., one-third of the settlement) and $465.00 in expenses. The settlement agreement satisfies Cheeks v. Freeport Pancake House, Inc., 796 F.3d 199 (2d Cir. 2015) in every respect. The parties accordingly respectfully seek the Court's approval of it.

<u>FACTUAL AND PROCEDURAL BACKGROUND</u>

I.      <u>SUMMARY OF PLAINTIFF'S CLAIMS</u>

Defendants The French Paradox Inc. d/b/a OCabanon, Armel Joly and Alexandre Mur operate a French Restaurant located in Manhattan. Plaintiff alleges that Defendants employed her from September 2016 to December 11, 2019 to work as a server, performing the traditional duties of this position including taking customers' orders, placing them with the kitchen and serving food and drinks.

During the beginning of her employment, from September 2016 until mid-2017, Plaintiff's regular schedule consisted of five lunch shifts, Monday to Friday, from 10:30 a.m. to 4:00 p.m., equaling 6-hour days and 30 hours per week. Then, from mid-2017 until December 2019, her regular schedule consisted of four lunch shifts, Tuesday to Friday, from 10:30 a.m. to 4:00 p.m., equaling 6-hour days; and then one dinner shift on Saturday, from 4:00 p.m. to 12:00 a.m., equaling 8-hour days and 32 hours per week. She did not have any uninterrupted breaks.

However, her regularly scheduled hours were not the only hours that she worked. At least once a month, she worked double shifts, working lunch and dinner shifts on the same day, generally working from 10:30 a.m. to 8:00 or 9:00 p.m., with a 30-minute break, resulting in 9 to 10-hour days and 34.5 to 38 hours per week. Additionally, at least five weeks per year, she worked 6 days per week, picking up an extra dinner shift on her day off, working from 4:00 p.m. until 12:00 a.m. or until the restaurant closes, equaling at least an 8-hour day and an average of 42 hours per week. Furthermore, at least seven times per year, during holidays such as Valentine's Day, Halloween and New Year's Eve, she was required to come to work early to decorate the restaurant and work until all customers left, sometimes working from 2:00 p.m. to as late as 4:00 a.m., resulting in 14-hour days and up to 45 hours per week.

Despite working these hours, Defendant did not pay Plaintiff all of the wages that she was entitled to. Namely, Defendants generally paid Plaintiff the following hourly rates: $7.50 in 2016 and 2017, with taking a $3.50 tip credit against the minimum wage; $8.65 in 2018 with taking a $4.35 tip credit against the minimum wage; and $10.00 in 2019 with taking a $5.00 tip credit against the minimum wage. However, when she worked more than 40 hours per week, Defendants failed to pay her 1.5 times her regular rate of pay for all overtime hours because they sometimes only paid her at her regular rate of pay and a few times she noticed that a few overtime hours were missing from her paystubs. Further, when she worked more than 10 hours in a day, they did not pay her spread-of-hours pay: an extra hour at the minimum wage.

These are not the only asserted violations. During her employment, she regularly received credit and cash tip from Defendants' customers. But they did not allow her to keep 100% of her tips. Instead, she alleges that during her lunch shifts, they kept 50% of her tips, remitting them to one of the owners, Defendant Joly or Mur. And, during the dinner shifts, they made her pool her tips with the other service employees and – critically – a manager, who had authority to set employees' schedules and hire and fire employees, thereby unlawfully reducing her tip payout.

Due to the unlawful withholding of her gratuities, Plaintiff alleges that Defendants were not entitled to claim any tip credit against the hourly minimum wage she received. Accordingly, she asserts that they are liable to her for the difference between the hourly rate they paid her (the "tipped minimum wage") and the statutory minimum wage.  Finally, she asserts that they also did not provide her with the Notice and Acknowledgment of Payrate and Payday or with accurate wage statements, required under Labor Law §§ 195.1 and 195.3.

She, accordingly, asserts the following claims in her September 22, 2020 Complaint: failure to pay the minimum wage under the Labor Law; failure to pay overtime premium pay under

the FLSA and Labor Law; failure to pay spread-of-hours pay under the Labor Law; unlawfully retaining gratuities under the FLSA and Labor Law; failure to provide the Notice and Acknowledgement of Payrate and Payday under N.Y. Lab. Law § 195.1; and failure to provide an accurate wage statement under N.Y. Lab. Law § 195.[1]

Based on her memory and estimates, Plaintiff calculates she is owed $23,787.90 in unpaid minimum wage, $1,056.00 in unpaid overtime, $1,512.00 in unpaid spread-of-hours premium, and $42,577.92 in unpaid gratuities, and $10,000.00 record keeping violations. She calculates her total recovery, minus interest and liquidated damages, to be $78,933.82.

II.     SUMMARY OF DEFENDANTS' DEFENSES

Defendants adamantly deny any wrongdoing and that Plaintiff worked the hours she claims and that she is owed the money that she alleges she is owed.[2] Specifically, they assert that, based on their contemporaneous clock-in and clock-out records, Plaintiff usually worked 5.5 to 8 hours per day and between 27 to 32 hours per week, almost never working more than 40 hours per week. Further, a few times a year when she did work over 40 hours per week, Defendants deny underpaying or shaving off any overtime hours from her paystubs and maintain that they paid her 1.5 times her regular rate of pay for all her overtime hours. They also maintain that her paystubs were accurate as to the hours worked and wages received. As such, they assert that they do not owe her any unpaid overtime wages and spread-of-hour premium pay. Defendants further assert that they are not liable for the Labor Law § 195.3 violation, because they issued her with accurate wage statements.

---

[1] September 22, 2020 Complaint (Doc. No. 1).
[2] February 5, 2021 Amended Answer (Doc. No. 23).

Defendants further deny unlawfully retaining gratuities and maintain that their tip pooling practices are lawful. Specifically, they maintain that only the service staff was allowed to participate in the tip pool and no employees or managers, with hiring and firing authority, were involved in sharing of the earned gratuities. Defendants also strongly deny the amounts of the allegedly underpaid gratuities and state that, if any are owed, based on their credit and cash tips records, they are far less than alleged. Finally, they strongly assert that they were entitled to take tip credit against the minimum wage and that she is not entitled to any underpaid minimum wage.

Defendants also represent that they lack the financial resources to pay the amount of the full recovery that Plaintiff seeks, especially with the Covid-19 pandemic disruptions that have heavily affected the restaurant industry during the last year.

III.    SETTLEMENT NEGOTIATION HISTORY AND SETTLEMENT TERMS

On December 1, 2020, the Court referred this matter to mediation. In anticipation of the mediation, the parties exchanged limited formal discovery and a meaningful amount of informal discovery on the claims and defenses of this action. On February 16, 2021, the parties participated in the mediation with the Court-appointed mediator, Deborah A. Shapiro, a highly experienced wage and hour mediator and litigator. At the mediation, the parties reached an agreement to settle this matter for $57,000.00.

$37,534.96 of the $57,000.00 will be paid to Plaintiff, with the remaining $19,464.99 being paid to her counsel, Lipsky Lowe, for attorneys' fees and expenses:[3] $18,999.99 in fees (i.e., one-third of $57,000) and $465.00 in expenses. As Defendants lack the financial resources to pay the $57,000 in one payment, they will be paying this amount in 10 installment payments, delivered to

---

[3] March 11, 2021 Non-Confidential Settlement Agreement and Limited Release ("Agreement") ¶¶ 4.a-b, Exhibit A to Douglas B. Lipsky's April 9, 2021 Declaration ("Lipsky Dec.").

Plaintiff's counsel: first payment of $25,000 due within 10 days of the Court approving this Agreement; and nine subsequent payments of $3,555.55 every 30 days.[4] Plaintiff and her counsel will each receive a proportionate share of every payment. Defendants have provided a Consent Judgment, which Plaintiff may enter with the Court if they are in default.[5]

## PROCEDURAL HISTORY

When the settlement was reached, the parties had engaged in limited formal discovery and a meaningful amount of informal discovery. On February 1, 2021, Plaintiff filed a motion to conditionally certify the collective action under the FLSA.[6]

## LEGAL ARGUMENT

I.   THE SETTLEMENT AGREEMENT SHOULD BE APPROVED AS IT IS FAIR AND REASONABLE UNDER THE CIRCUMSTANCES AND COMPLIES WITH THE SECOND CIRCUIT'S DECISION IN *CHEEKS V. FREEPORT PANCAKE HOUSE, INC.*

A.   The Settlement Agreement is Fair and Reasonable

A court should consider the totality of circumstances to determine whether the proposed settlement is fair and reasonable. This includes at least five factors: (1) the complexity, expense and likely duration of litigation; (2) the stage of the proceedings; (3) the risks of establishing liability; (4) the risks of establishing damages; (5) the ability of defendants to withstand a larger judgment; and (6) the range of reasonableness in light of the best possible recovery and all the risks of litigation. Alvarez v. Sterling Portfolio Inv. L.P., No. 1:16-cv-5337 (CBA)(VMS), 2017 U.S. Dist. Lexis 206043, at *25 (E.D.N.Y. Dec. 13, 2017); Wolinsky v. Scholastic Inc., No. 11-cv-5917 (JMF), 2012 U.S. Dist. LEXIS 93918, at *4-5 (S.D.N.Y. July 5, 2012) (citing Medley v.

---

[4] Agreement ¶¶ 4.a-b.
[5] Agreement, Exhibit A.
[6] Plaintiff's February 1, 2021 Motion to Conditionally Certify the Collective Action and for a Court-Authorized Notice under 29 U.S.C. § 216(b) of the Fair Labor Standard Act (Dkt. 21-22).

Am. Cancer Soc., No. 1:10-cv-3214 (BSJ), 2010 U.S. Dist. LEXIS 75098, at *3 (S.D.N.Y. July 23, 2010)).

In considering these factors, courts may enter judgment on a basis that does not require full payment of plaintiff's claims or liquidated damages. This is appropriate where, like here, there is a strong likelihood that the defendants would be able to defeat a plaintiff's claims based on the existence of records documenting the hours worked by all employees, and by the likelihood that the defendants could not satisfy a full judgment. See Feuer v. Cornerstone Hotels Corp., No. 14-CV-5388 (JFB) (SIL), 2020 WL 401787, *4, *9-*10 (E.D.N.Y. Jan. 24, 2020) (dismissing the bulk of plaintiffs' claims based on defendant's records); Sanchez v. Alan's R E 99 Cents & Up Inc., No. 1:16-cv-1881 (CBA) (LB), 2018 U.S. Dist. LEXIS 70647, *9 (E.D.N.Y. April 24, 2018) (approving settlement that provides for 20% of the claimed damages based on defendants' financial condition); Sampaio v. Boulder Rock Creek Developers, Inc., No. 1:07-cv-153 (ETB) 2007 U.S. Dist. LEXIS 66013, *3 (E.D.N.Y. Sept. 6, 2007) (approving settlement as reasonable in light of the parties' disputes on the number hours plaintiff worked, and the "respective burdens the parties face with respect to their claims and defenses").

### 1.    Case Complexity, Expense and Duration of Litigation

While certain parts of this FLSA matter are not highly complex, serious factual and legal questions exist that would require heavy litigation. The parties do not agree on the basic facts, including the hours Plaintiff worked, whether Defendants' tip pool practices were unlawful and whether she was entitled to the full statutory minimum wage, as opposed to the tipped minimum wage. While some limited discovery occurred, if this case were to proceed, the parties would need to depose multiple witnesses and engage in extensive written discovery, including the exchange of electronically stored Discovery. This litigation would be costly and time-consuming. As such, this factor favors approving the settlement. See Marshall v. Deutsche Post DHL, 1:13-cv-1471 (RJD)

(JO), 2015 U.S. Dist. Lexis 125869, at *12  (E.D.N.Y. Sept. 21, 2015) (finding that costly litigation favors approving settlement).

### 2.     The Stage of the Proceedings

While the parties have engaged in limited formal discovery, they exchanged meaningful informal discovery, allowing them to adequately evaluate the strengths and weaknesses of their respective claims and defenses. This favors approving the settlement. See Alvarez, 2017 U.S. Dist. Lexis 206043, at *8 (approving settlement where discovery was incomplete but the parties had sufficient information to analyze the case); Hall v. Prosource Techs., LLC, No. 1:14-cv-2502 (SIL), 2016 US. Dist. Lexis 53791, at *39 (E.D.N.Y. April 11, 2016) (approving settlement where informal discovery was exchanged sufficient enough the parties had "adequate knowledge of the strengths and weaknesses of their respective claims and defenses").

### 3.     The Risks of Establishing Liability and Damages

The settlement will enable Plaintiff to avoid litigation risk. The largest portion of her claimed damages are the unpaid minimum wage and unlawfully retained gratuities. Several significant risks exist for these claims. First, Defendants sharply disagree on the hours that she worked and their time records support their position. Second, Defendants maintain that they were entitled to take a tip credit against her minimum wage and have records and witnesses that will support their assertions. Third, they maintain that their tip pooling practices were lawful and, even if they owed her any gratuities, their credit card and cash receipts indicate that this amount is a fraction of what Plaintiff alleges. If Defendants are correct, her minimum wage claim would go from $23,787.90 to zero and unpaid gratuity claim would go from $42,577.92 to a fraction of this amount.  It is accordingly uncertain whether, or how much, she would recover at trial; therefore, this factor favors approval of the settlement. See Marshall, 2015 U.S. Dist. Lexis 125869, at *13 (explaining because the case was not a "slam dunk" these factors favor approval); Bodon v.

Domino's Pizza, LLC, No. 1:09-cv-2941 (SLT), 2015 U.S. Dist. Lexis 17358 (E.D.N.Y. Jan. 16, 2015) ("[T]she question [in assessing the fairness of a class action settlement] is not whether the settlement represents the highest recovery possible . . . but whether it represents a reasonable one in light of the uncertainties the class faces . . . .").

### 4.   The Ability of Defendants to Withstand a Larger Judgment

Defendants represent they lack the financial resources to pay the total amount of Plaintiff's claimed damages. This is a factor in her agreeing to resolve her claims for less than her claimed damages. The settlement, however, remains reasonable considering Defendants' financial condition. See Sanchez, 2018 U.S. Dist. LEXIS 70647, *9 (approving settlement that provides for 20% of the claimed damages based on defendants' financial condition).

### 5.   The Range of Reasonableness In Light of the Best Possible Recovery and All the Risks of Litigation

Plaintiff calculates her total recovery, excluding interest and liquidated damages, to be $78,933.82. To obtain this, she would have to disprove Defendants' contemporaneous time records that indicate she worked much less hours than she has alleged. She would also have to prove that Defendants' tip pool practices were unlawful and then prove the amount of the alleged underpayments inspire of Defendants' credit card and cash receipts. Defendants, again, sharply dispute the number of hours she worked per week, asserting that she mostly worked part-time and almost never worked any overtime. They also deny any unlawful tip pool practices and state that if any gratuity underpayments exist it is a fraction of the alleged amounts. A real likelihood therefore exists that she would recover a fraction of the settlement amount for her unpaid wages and gratuities claims. This range favors approval. See Alvarez, 2017 U.S. Dist. Lexis 206043, at * 25. (approving an FLSA settlement where plaintiff's recovery range varied significant on the success of certain defenses). The settlement amount is, at bottom, reasonable.

B.     The Agreement Is the Product of Arm's-Length Settlement Negotiations

The settlement was reached after the parties exchanged limited formal and meaningful informal discovery, a mediation with Ms. Deborah A. Shapiro and extensive arm's-length negotiations between counsel well-versed in this legal area.[7] These factors favor approval. See Garcia v. Pancho Villa's of Huntington Vill., Inc., No. 1:09-cv-486 (ETB), 2012 U.S. Dist. Lexis 144446, at * 7-8 (E.D.N.Y. Oct. 4, 2012) (approving settlement that was reached following arm's-length negotiations and with a mediator's assistance); Toure v. Amerigroup Corp., No. 1:10-cv-5391, 2012 U.S. Dist. Lexis 110300, at *8 (E.D.N.Y. Aug. 6, 2011) ("Arm's-length negotiations involving counsel and a mediator raise a presumption that the settlement achieved meets the requirements of due process.").

C.     The Agreement Complies with the Second Circuit's Decision in *Cheeks v. Freeport Pancake House*

In August 2015, the Second Circuit resolved an arguably unsettled issue: parties cannot privately settle FLSA claims without either the approval of the district court or the Department of Labor. See Cheeks v. Freeport Pancake House, Inc., 796 F.3d 199, 206 (2d Cir. 2015). The Court also explained in dicta when an FLSA settlement is valid. Namely, it questioned the validity of agreements that contain confidentiality provisions, single-sided general releases and attorneys' fees that go beyond a certain percentage. Id. None of those issues are present in the Agreement.

1.     The Agreement is Public

The Agreement does not contain a confidentiality provision and the parties acknowledge it will be publicly available and filed on the CM/ECF system.[8] This concern thus does not exist, favoring approval.

---

[7] Lipsky Dec. ¶¶ 7, 8.
[8] Agreement ¶ 9.

2.    A Limited Release Exists

The release is limited to the wage and hour claims asserted in this action. This favors approval.[9] See Gomez v. Midwood Lumber & Millwork, Inc., No. 1:17-cv-3064 (KAM)(JO), 2018 U.S. Dist. Lexis 101019, at * 15 (E.D.N.Y. June 17, 2018).

3.    The Non-Disparagement Provision Is Properly Tailored

The Agreement's non-disparagement language permits Plaintiff to truthfully discuss with others the facts and claims in this lawsuit.[10] This provision is therefore consistent with the FLSA's purpose. See Qiting Yang v. Matsuya Quality Japanese, Inc., 1:15-cv-1949 (JS)(ARL), 2017 U.S. Dist. Lexis 14823, *4 (E.D.N.Y. 2017) (explaining a non-disparagement provision, to comply with the FLSA, must permit the employee to discuss with others her or claims and litigation experience.); Panganiban v. Medex Diagnostic and Treatment Ctr., LLC, No. 1:15-cv-2588 (AMD)(LB), 2016 U.S. Dist. Lexis 29158, at * 6 (E.D.N.Y. Mar. 7, 2016).

II.    THE COURT SHOULD APPROVE PLAINTIFF COUNSEL'S FEES AND EXPENSES, AS THE AMOUNTS ARE REASONABLE

A.    Counsel's Fees of One-Third of The Settlement Is Reasonable and Regularly Approved

Plaintiff's Counsel shall receive under the Agreement, subject to the Court's approval, $19,464.99: $18,999.99 in fees (i.e., one-third of the $57,000.00 settlement) and $465.00 in expenses. This amount is reasonable as contingency fees of one-third in the FLSA context are routinely approved. See, e.g., Emiliano Nieto Zepeda v. Baggio, Ltd., No. 1:17-cv-2290 (VB), 2017 U.S. Dist. LEXIS 143332, at *2 (S.D.N.Y. Sept. 1, 2017) (approving one-third request fee request); Febus v. Guardian First Funding Grp., LLC, 870 F. Supp. 2d 337, 340 (S.D.N.Y. 2012)

---

[9] Agreement ¶ 3.
[10] Agreement ¶ 8.

11

("[A] fee that is one-third of the fund is typical" in FLSA cases). And it remains reasonable for counsel to receive one-third of the fund even when the plaintiff is not receiving 100% of her claimed damages. See Emiliano Nieto Zepeda, 2017 U.S. Dist. LEXIS 143332, at *2 (approving one-third request when plaintiff is receiving 50% of her claimed damages).

Also, this firm assumed a meaningful financial risk when agreeing to represent Plaintiff under this contingency fee arrangement: counsel invested its time and effort and advanced costs and expenses with no guarantee of compensation and no guarantee if and when there would be a resolution. Indeed, in unsuccessful cases, this firm does not recover anything despite investing hundreds of hours and thousands in expenses. This assumption of risk further favors approving the one-third contingency fee. See Garcia, 2012 U.S. Dist. Lexis 144446, at *20; Campos v. Goode, No. 1:10-cv-224 (DF), 2011 U.S. Dist. Lexis 22959, at *19 (S.D.N.Y. March 4, 2011).

**B.    Counsel's Fee Request Is Further Reasonable Considering Their Hourly Rates and Hours Expended**

Plaintiff's Counsel has expended more than 84 hours on this matter at hourly rates of $400 (partner), $300 (associate) and $100 (paralegal), totaling at least $26,838.00 in fees.[11] These hours and hourly rates are reasonable.

**1.    The Requested Hourly Rates Are Reasonable**

Counsel's hourly rates are reasonable. A reasonable hourly rate is one which a "paying client would be willing to pay." Arbor Hill Concerned Citizens of Neighborhood Ass'n v. County of Albany, 522 F.3d 182, 184 (2d Cir. 2007). To find a reasonable hourly rate, the Court must determine whether the requested rates are "in line with those rates prevailing in the community for

---

[11] Lipsky Dec. Exhibit B.

similar services by lawyers of reasonably comparable skill, experience and reputation." Reiter v. MTA N.Y.C. Transit Auth., 457 F.3d 224, 232 (2d Cir. 2006).

Plaintiff requests a rate of $400 for Douglas Lipsky, which is reasonable considering his background: he has practiced employment law for 17 years; he is a member of the New York State Bar Association, Wage and Hour Committee; he has presented on numerous issues, including presenting to the New York State Academy of Trial Lawyers on employment law and the FLSA; and he was a contributing authority on a treatise on wage and hour litigation, Wage & Hour Collective and Class Litigation, ALM Law Journal Press (2012). Courts, recognizing this background, have previously approved this rate. See Patrascu v. Frederic Fekkai New York LLC, 1:19-cv-1376 (VEC) (S.D.N.Y. June 17, 2020) (approving Lipsky's $400 rate); Owens v. Fresh Direct LLC, 1:14-cv-1909 (VEC) (S.D.N.Y. Oct. 30, 2015) (approving one-third fee request in which, for lodestar purposes, Lipsky's hourly rate was $400); Spencer v. No Parking Today, Inc., et al., No. 12-cv-6323 (ALC) (AJP), Dkt. No. 237 (S.D.N.Y. Feb. 20, 2015) (approving one-third fee request in which, for lodestar purposes, Lipsky's hourly rate was $400); Ceka v. PBM/CMSI Inc., No. 12-cv-1711 (DAB), 2014 U.S. Dist. LEXIS 168169, *20 (S.D.N.Y. Dec. 2, 2014) (same). Those decisions are consistent with what other courts within this District have approved for attorneys with similar experience. See, e.g., Garcia v. Hirakegoma Inc., 1:17-cv-7608 (SLC), 2020 U.S. Dist. Lexis 40637, at *29 (S.D.N.Y. March 9, 2020) ("In this district, courts generally award experienced wage-and-hour attorneys between $300 to $400 per hour"); Pastor v. Alice Cleaners, Inc., 1:16-cv-7264 (JLC), 2017 U.S. Dist. Lexis 192806, at *17 (S.D.N.Y. Nov. 21, 2017) ("Courts find rates in the $250 to $450 range reasonable for experienced litigators working on wage-and-

13

hour cases). Also, Mr. Lipsky represents individuals who regularly pay him an hourly rate that exceeds $500, underscoring the reasonableness of the requested rate.[12]

Plaintiff requests an hourly rate of $300 for Milana Dostanitch, which is reasonable considering her background: she is a seventh-year associate who graduated in 2014 from Fordham University School of Law and has practiced exclusively in employment law since graduating; she is an Adjunct Professor at Fordham University School of Law, where she teaches trial preparation and courtroom presentation; and she is a Committee Member of the Labor and Employment Law Committee. While no court in this District has previously approved her rate, at $300 or any other rate, courts in the Eastern District have approved her $300 hourly rate. See Batista v. Heavy Construction Co., Inc. et al. No. 1:20-cv-03431 (RER), (E.D.N.Y. February 15, 2021) (approving Ms. Dostanitch's rate of $300 as reasonable in an FLSA matter); Huziankou v. NY Sweet Spot Cafe Inc. et al., No. 1:18-cv-05715 (RER), Dkt. No. 53 (E.D.N.Y. October 9, 2020) (same); Salvador v. Highland Int'l Transpo. Serv. Inc., 1:18-cv-5716 (SJB) (E.D.N.Y. July 25, 2019) (same). Importantly, when comparing rates between the Southern and Eastern District, a "somewhat lower rate structure is more commonly applied in the Eastern District." Centro De La Comunidad Hispana De Locust Valley v. Town of Oyster Bay, 2019 U.S. Dist. LEXIS 102840, at *17 (E.D.N.Y. June 18, 2019). This reinforces the reasonableness of the $300 rate in this matter. Reflecting this, courts in this District have approved comparable hourly rates for associates with similar experience as Ms. Dostanitch. See Rodriguez v. Obam Mgmt, 1:13-cv-463 (PGG)(DF), 2016 U.S. Dist Lexis 34154, at *74 (S.D.N.Y. March 14, 2016) (in a case decided more than 6 years ago, approving the hourly rate of $300 for an associate with 8 years of experience); Sanchez Gallego v. Adyar Ananda Bhaven Corp., 1:16-cv-4631 (AN), 2019 U.S. Dist. Lexis 3423

---

[12] Lipsky Dec. ¶ 6.

(S.D.N.Y. Jan. 8, 2019) (approving hourly rate of $350 for a senior associate); Liang Huo v. Go Sushi Go 9th Avenue, No. 1:13-cv-6573 (KBF), 2014 U.S. Dist. Lexis 51621 (S.D.N.Y. April 10, 2014 (same). Like Mr. Lipsky, when she represents individuals who pay an hourly rate, Ms. Dostanitch charges them rates that exceed the requested rate, charging rates of $375.[13]

As to the paralegal on the matter, Carmenliggia Espinal, Plaintiff requests an hourly rate of $100. Ms. Espinal graduated with a master's degree in Public Administration from John Jay College of Criminal Justice in 2013 and a master's degree in Paralegal Studies from George Washington University in 2017. She has worked as a paralegal since 2013. Her rate is consistent with what is approved in this District. See Garcia, 2020 U.S. Dist. Lexis 40637, at *30 ("Hourly rates of $100 to $150 per hour are typical for awards in this District.").

It is worth noting that hourly rates are not stagnant: they generally increase over time, resulting in the market rate for a junior associate in 2021 being greater than what it was in 2015. The average attorney hourly rates in New York, in fact, increased by 3% in 2020.[14] It accordingly follows that the hourly rates that were approved in earlier years do not reflect what those rates would be today for someone with the same experience. Putting this in context, the $300 hourly rate that was approved in 2016 for the 8th year associate in Rodriguez v. Obam Mgmt, would be $348, assuming the rates increased by 3% each year.[15]

Finally, these rates are reasonable on their face. They are even further reasonable considering Counsel's request for $18,999.99 in fees equals 68% of their total fees of $27,828.00 ($18,999/$27,828).

---

[13] *Id.*

[14] https://www.attorneyatwork.com/solo-and-small-firm-lawyer-hourly-rates/

[15] $300 x 1.03^5 = $348.

C.      Plaintiff's Counsel Are Entitled to Their Expenses

Plaintiff's Counsel are entitled to recover costs in additional to their reasonable fees. See

29 U.S.C. § 216(b); N.Y. Lab. Law §§ 198(1-a), 663. These include reimbursement for, by way of

example, filing fees, process servers, copying and postage. See Marquez v. Erenler, Inc., No. 12-

cv-8580 (GHW), 2014 U.S. Dist. LEXIS 159128, at *9 (S.D.N.Y. Nov. 10, 2014) (awarding filing

and transcript fees, and process server expenses); Morris v. Affinity Health Plan, Inc., 859 F. Supp.

2d 611, 624 (S.D.N.Y. 2012) (awarding expenses including filing fees and postage).

Here, Counsel is seeking $465.00 in expenses.[16] As this amount includes expenses for

filing fees. Counsel should be reimbursed for them.

CONCLUSION

For the foregoing reasons, the parties respectfully submit the Court should approve the

Agreement as fair and reasonable and approve Plaintiff Counsel's requested fees and expenses.

Dated:  New York, New York
         April 9, 2021

                              Respectfully submitted,
                              LIPSKY LOWE LLP


                              s/ Douglas B. Lipsky
                              Douglas B. Lipsky
                              Milana Dostanitch
                              420 Lexington Avenue, Suite 1830
                              New York, New York 10170-1830
                              212.3924772
                              Plaintiff's Counsel

---

[16] Lipsky Dec. Exhibit C.

16